**Opinion issued March 5, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00550-CV

————————————

## VICTOR S. ELGOHARY, Appellant

## V.

## GILBERT A. HERRERA, Appellee

On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Case No. 2010-40476

# O P I N I O N

This is an appeal from a trial court judgment confirming in part, denying in part, and vacating in part an arbitration award. In several related issues on appeal, appellant contends the trial court erred in denying confirmation of and vacating an

arbitration award against a non-signatory to the arbitration agreement. Thus, the issue presented in this appeal is who properly decides the issue of arbitrability against a non-signatory—the trial court or the arbitrator.

## BACKGROUND

In November 2006, Elgohary entered into a written employment agreement with his employer, Herrera Partners, L.P. ["Herrera Partners"]. Herrera Partners was a Texas limited partnership with Gilbert Herrera ["Herrera"] as the limited partner and G.A. Herrera & Co., LLC ["Herrera LLC"] as the general partner. The agreement was signed by Elgohary and Herrera. Herrera's signature indicating that he was signing the document in his role as President of Hererra Partners. Neither Herrera, nor Herrera LLC were signatories. The employment agreement contained an arbitration agreement, which provides:

> Upon the demand of either party, any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof, or that arises out of the relationship of the parties shall be resolved by mandatory binding arbitration in Houston, Texas.

In May 2007, Herrera Partners terminated Elgohary's employment for cause. A dispute arose between the parties over Elgohary's claim that Hererra Parners owed him his salary for work performed after May 1, 2007 until the day he was terminated, as well as reimbursement of certain expenses.

In June 2007, Herrera Partners was formally dissolved. Elgohary contends that this was an attempt "to evade [Herrera Partners's] creditors," while the

2

arbitrator, who considered the issue, concluded that the dissolution was "a result of changes in Texas law that would have created a greater tax burden on limited partnerships."

In March 2009, after first unsuccessfully pursuing a claim for unemployment benefits,[1] and filing then non-suiting two defamation suits, Elgohary demanded arbitration. Elgohary sought arbitration against Herrera Partners, which was a signatory to the arbitration agreement, and also Herrera, individually, who was not a signatory to the arbitration agreement. There was no court order compelling arbitration.

Hererra Partners answered and filed a counterclaim, while Herrera objected that he was not a party to the employment agreement and could not be subjected to arbitration:

> Herrera is not a party to the arbitration agreement giving rise to this proceeding. Herrera does not consent to joinder in this proceeding. Herrera does not waive the right to have Movant's alleged claims against him decided in a Harris County, Texas court of law before a duly empaneled jury. Herrera respectfully submits that the American Arbitration Association has no authority to administer the prosecution of Movant's alleged claims against Herrera. Herrera is not a proper party to this proceeding and requests that he be released from this proceeding.

---

[1] *See Elgohary v. Tex. Workforce Comm'n*, No. 14-09-00108-CV, 2010 WL 2326126 (Tex. App.—Houston [14th Dist.] June 10, 2010, no pet.).

3

Herrera continued to argue throughout the arbitration proceeding that whether he as a non-signatory should be compelled to arbitrate was a "gateway matter" for the court to decide, not the arbitrator.

Based on a "successors and assigns" clause in the employment agreement,[2] the arbitrator overruled Herrera's objection finding that

> [t]he employment contract "clearly and unmistakably" is applicable to successors to Herrera Partners, LP. In the Arbitrator's view, the parties have "clearly and unmistakably incorporated any successor to Herrera Partners, LP as a party covered by the arbitration process of the employment contract. Based on the authority of the Arbitrator, I find Gilbert Herrera as the successor to Herrera Partners, LP to be a proper party to this arbitration proceeding.

The arbitrator ultimately awarded Elgohary $5,208.34 in unpaid wages and $2,048.70 in unpaid business expenses, plus prejudgment interest and attorney's fees, and denied Herrera Partners's counterclaim. The Award of Arbitrator also provided that "[t]his award applies to [Herrera Partners] and any successor, including Gilbert Herrera." The award did not name Herrera LLP as a party.

Elgohary then filed a suit to confirm the award against Herrera Partners, Herrera, and Herrera LLC, even though Herrera LLC was not named in the award. Herrera Partners did not answer. Herrera answered, objected to confirmation, and

---

[2] The "successors and assigns" clause provides as follows:

> The rights and obligations of this Agreement shall be binding on the Partnership's successors and assigns and inure to the benefit of any successor or assign or the Partnership.

4

moved to vacate the award, arguing that the arbitrator had exceeded his powers by making him a party to the arbitration. Herrera LLC answered and objected to confirmation, arguing that it was not named in the arbitration award.

The trial court (1) granted the application to confirm as to Herrera Partners, (2) denied the application to confirm as to Herrera and Herrera LLP, and (3) vacated the arbitration award against Herrera. This appeal followed.[3]

## DID THE ARBITRATOR EXCEED HIS POWERS?

In issues two and three, Elgohary contends the trial court erred in failing to confirm, and in vacating, the award as to Herrera, individually. Specifically, Elgohary contends that "[t]he trial court erred in vacating the arbitration award against Gilbert Herrera since the Arbitrator had the authority to determine issues of arbitrability and found that Gilbert Herrera was the successor to the arbitration contract."

Under the FAA, an arbitration award can be vacated for any of several enumerated reasons, one of which is that "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4); *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 352 (5th

---

[3] The parties agree that this case is governed by the Federal Arbitration Act ["FAA"]. In such cases, a party may appeal an order "under the same circumstances that an appeal from a federal district court's order or decision would be permitted by" section 16 of the FAA. TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (Vernon Supp. 2012). Section 16 of the FAA allows for the appeal of, among other things, an order that confirms, denies confirmation, or vacates an arbitration award. 9 U.S.C. § 16(a)(1)(D), (E) (2006).

5

Cir. 2009). Arbitrators exceed their powers when they decide matters not properly before them. *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex. App.—Dallas 2009, no pet.); *Barsness v. Scott*, 126 S.W.3d 232, 241 (Tex. App.—San Antonio 2003, pet. denied). When the arbitrator issues an award against a party not subject to arbitration, he has exceeded his powers. *Rapid Settlements, Ltd., v. Green*, 294 S.W.3d 701, 707 (Tex. App.—Houston [1st Dist. 2009, no pet.) Thus, the issue this Court must decide is whether the arbitrator exceeded his authority by determining that Herrera, a non-signatory to the arbitration agreement, was nonetheless bound to arbitrate.

"Generally, only signatories to an arbitration agreement are bound by the agreement." *In re James E. Bashaw & Co.*, 305 S.W.3d 44, 54 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) (citing *Brown v. Pac. Life Ins. Co.,* 462 F.3d 384, 398 (5th Cir.2006)). "While non-signatories to an arbitration agreement can be bound to arbitrate under principles of contract and agency law, such issues—dealing as they do with non-signatories—are gateway 'issues of arbitrability' that the courts are primarily responsible for deciding—not the arbitrator." *Roe v. Ladymon*, 318 S.W.3d 502, 515 (Tex. App.—Dallas 2010, no pet.) (*citing Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588 (2002)). However, if the court determines that the parties "clearly and unmistakably agreed" to submit arbitrability to the arbitrator, we defer to the

6

arbitrator's decision on the issues. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924 (1995); *Roe*, 318 S.W.3d at 514. Absent such "clear and unmistakable evidence" that the parties agreed to the contrary, the primary power to decide arbitrability resides with the court, not the arbitrator. *See First Options*, 514 U.S. at 944, 115 S. Ct. at 1924; *Howsam*, 537 U.S. at 84, 123 S. Ct. at 588; *Roe*, 318 F.3d at 514. We focus on whether there is such an agreement between *the parties to the dispute before the court*, not between the parties to the arbitration agreement itself. *See Roe*, 318 S.W.3d at 514 (*citing First Options*, 514 U.S. at 946–47, 115 S. Ct. at 1925).

In *First Options*, the Supreme Court explained that "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." 514 U.S. at 944, 115 S. Ct. at 1924 (internal quotation marks and alterations omitted). The issue there was whether Kaplan, the owner of a wholly owned investment company, was required to arbitrate a dispute over an agreement between his investment company and another firm. *Id.* at 941, 115 S. Ct. at 1922. While it was undisputed that his investment company had agreed to arbitrate under the agreement, Kaplan asserted that because he had not personally signed the agreement, he was not obligated to arbitrate in an individual capacity. *Id.* Because this was a gateway question of "who should decide arbitrability," the Court cautioned that "silence or ambiguity" on the point

should not be interpreted to give the arbitrators the power to decide the issue. *Id.* at 945, 115 S. Ct. at 1925. Since Kaplan had not clearly and unmistakably agreed to arbitrate the question of whether he himself was bound by the agreement, the Court held that this was a question for judicial resolution. *Id.* at 946–47, 115 S. Ct. at 1925–26.

Thus, we turn to the issue of whether there is "clear and unmistakable evidence" that Elgohary and the non-signatory, Herrera, had agreed to submit the issue of arbitrability to the arbitrator. Elgohary argues that there is clear and unmistakable evidence that Herrera agreed to arbitrate, in that (1) Herrera signed the employment agreement as agent for the company, (2) the arbitration provision invoked the rules of the American Arbitration Association, which gives the arbitrator the authority to decide his own jurisdiction, and (3) the employment agreement contained a "successors and assigns" clause. We address each argument respectively to determine whether it presents "clear and unmistakable evidence" of an agreement to allow the arbitrator to decide the gateway issue of arbitrability.

### *Signing as Agent?*

Elgohary argues that Herrera was "bound to arbitrate in his individual capacity since he was Herrera Partner. L.P.'s sole agent . . ." However, signing a contract in a representative capacity does not bind the agent personally to the

8

contract. *See* RESTATEMENT (SECOND) OF AGENCY §320 ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.").

In *Roe*, 318 S.W.3d at 507, the appellee signed an agreement in his capacity as a partner of a limited partnership. The agreement contained an arbitration agreement invoking the FAA. *Id.* The plaintiff sought arbitration against both the signatory partnership and the non-signatory partner. *Id.* at 508. The appellee objected to arbitration, arguing that he was not a party to the agreement. *Id.* The arbitrator overruled the appellees objection and entered an award against both the partnership and him, individually. *Id.* at 509. The trial court confirmed the award as to the partnership, but vacated it as to the partner, individually. *Id.* On appeal, the court held that appellee's signature on the contract as agent was not evidence "that he clearly and unmistakably agreed the arbitrator could decide whether he [was] bound to arbitrate claims against him individually." *Id.* at 516.

In *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 313 (5th Cir. 2011) an arbitrator entered an award against two signatory corporations and two non-signatory officers of those corporations. *Id.* at 313. The district court confirmed the arbitration award, but the court of appeals reversed the order confirming the award against the non-signatory officers. *Id.* at 314, 320. In so holding, the Fifth Circuit stated that "the fact that the defendant corporations entered into the

9

Subscription Agreements did not cause their agents, Weyand and Thiessen, who acted only as officers on behalf of the corporations to be personally bound by those agreements." *Id*. at 314–15. The court, citing *Roe v. Ladymon* with approval, held that the agents who signed only in a representative capacity were not bound by the terms of the agreement including the arbitration provision. *Id*. at 315.

Elgohary, nonetheless, cites *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) (orig. proceeding) and *In re Merrill Lynch Trust Co.*, 235 S.W.3d 185, 189 (Tex. 2007) (orig. proceeding), for the proposition that agents and representatives of parties to contracts containing arbitration clauses are also bound to arbitrate. However, both *Roe* and *DK Joint Venture* distinguished these cases, noting that in *Roe* and *Merrill Lynch*, the party resisting arbitration was, in fact, a signatory to the contract and a non-signatory was seeking to compel arbitration. *See DK Joint Venture*, 649 F.3d at 315 (citing *Roe*, 318 S.W.2d at 520). "*In re Vesta* stands for the proposition that a signatory plaintiff cannot avoid its agreement to arbitrate dispute simply by bringing . . . claims against the [nonsignatory] officers, agents, or affiliates of the other signatory to the contract." *Roe*, 318 S.W.2d at 520. Both *Roe* and *DK Joint* Venture hold that "it matters whether the party resisting arbitration is a signatory or not." *DK Venture*, 649 F.3d at 317. If the party resisting arbitration is not a signatory to the contract, his status

10

as an agent of the signatory entity will not bind him to the arbitration provision. *Id.*

This case is like *Roe* and *DK Venture* and unlike *Vesta* and *Merrill Lynch*. Herrera is a non-signatory to the arbitration provision, and his signing the agreement as agent is not a clear and unmistakable agreement to submit claims against him personally to arbitration.

### Invoking the Rules of the American Arbitration Association?

Elgohary also contends that Rule 7(a) of the Commercial Arbitration Rules of the AAA permits an arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement," and that by invoking the AAA in the arbitration agreement in this case, the parties clearly and unmistakably agreed to submit arbitrability issues to the arbitrator.

*Roe v. Ladymon* considered and rejected this same argument, noting that "the entities who agreed to arbitrate under the AAA rules are Metro LLP and Roe, not Ladymon." 318 S.W.3d at 517. As was the case in *First Options*, the terms of the contracting parties' agreement to arbitrate is not evidence that a non-contracting party—here Ladymon—agreed to arbitrate or to do so under AAA rules, much less clear and unmistakable evidence of such an agreement." *Id.* (citing *First Options*, 514 U.S. at 946–47, 115 S. Ct. at 1920).

11

We agree that Herrera Partners's agreement to arbitrate under AAA rules is not clear and unmistakable evidence that Herrera agreed to arbitrate under AAA rules for claims against himself, individually.

## *The "Successors and Assigns" clause?*

Elgohary's employment contract with Herrera Brothers contains a "successors and assigns" clause, which provides as follows:

> The rights and obligations of this Agreement shall be binding on the Partnership's successors and assigns and inure to the benefit of any successor or assign of the Partnership.

The arbitrator found that this clause was clear and unmistakable evidence that Herrera had agreed to arbitrate any claims against him personally.[4] Herrera responds that, by reaching the issue of whether he was the successor or assign of Herrera Brothers, the arbitrator exceeded his power.

The Fifth Circuit considered this issue *DK Joint Venture*, stating:

> The plaintiffs additionally argue that [the non-signatories] are bound by the arbitration provisions in the Subscription Agreements because of language in the agreements referring to "affiliates." The plaintiffs contend that the agreements purport to bind "affiliates" of the

---

[4]    The arbitrator ruled as follows:

> The employment contract "clearly and unmistakably" is applicable to successors to Herrera Partners, LP. In the Arbitrator's view, the parties have "clearly and unmistakably" incorporated any successor to Herrera Partners, LP as a party covered by the arbitration process of the employment contract. Based on the authority of the Arbitrator, I find Gilbert Herrera as the successor to Herrera Partners, LP to be a proper party to this arbitration proceeding.

defendant corporations and they further claim that [the non-signatories] count as "affiliates." However, this argument fails because, even if the Subscription Agreements could be interpreted in that manner, the defendant corporations lacked the authority to bind [the non-signatories] personally.

*Id.* at 318–19.

In *First Options*, the Supreme Court explained the difference between a dispute about a non-signatory's liability for a debt and whether that non-signatory was bound to arbitrate.

First, [the non-signatories] and First Options disagree about whether the [non-signatories] are personally liable for [their wholly-owned company's] debt to First Options. That disagreement makes up the *merits* of the dispute. Second, they disagree about whether they agreed to arbitrate the merits. That disagreement is about the *abitrability* of the dispute. Third, they disagree about *who should have the primary power to decide the second matter*. Does that power belong primarily to the arbitrators (because the court reviews their arbitrability decision deferentially) or the court (because the court makes up its mind about arbitrability independently)? We consider here only this third question.

514 U.S. at 942, 111 S. Ct. at 1923.

Becasuse the non-signatories in that case had not signed the agreement in their individual capacity, the *First Options* Court held that the court, not the arbitrator, was to decide the issue. *Id.* at 946, 115 S. Ct. at 1925–26.

By deciding that Herrera was bound by the "successors and assigns" clause of the employment agreement, the arbitrator skipped to the "merits" of the dispute without there first being a judicial determination as to whether Herrera,

individually, had agreed to arbitrate. We agree with the Fifth Circuit, that evidence of a successor, assigns, or affiliates clause in the contract between the signatories is not evidence that the non-signatory intended that an arbitrator decide whether the non-signatory was bound under the contract's provisions about successors. *See DK Joint Venture*, 649 F.3d at 318–19; *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S. Ct. 909, 912 (1964) (holding that court should decide whether arbitration clause binds successor corporation).

### *Other Theories Requiring Non-signatory to Arbitrate?*

Texas and federal law recognize six theories under which *a court* could compel a non-signatory to arbitrate. *In re Merrill Lynch Trust Co.*, 235 S.W.3d at 191; *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003). Those theories include (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary. *Bridas*, 345 F.3d at 356. However, these issues are to be resolved by the court before compelling a non-signatory to arbitration. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (reviewing whether *trial court* properly denied motion to compel non-signatory to arbitrate under direct benefits estoppel theory); *Roe*, 318 S.W.3d at 519 (holding that *trial court* properly determined that non-signatory was not bound either as agent for or as successor to signatory of contract); *Bridas S.A.P.I.C.*, 345 F.3d at 358–59 (reviewing *trial court's*

14

*independent review* of whether non-signatory was bound to arbitrate under theories of agency, alter ego, estoppel, and third-party beneficiary).

Because the trial court, not the arbitrator, should have decided the "gateway issue" of whether Herrera had agreed to be bound by the arbitration, the arbitrator exceeded his authority.

### *Remand for Independent Review of Arbitrability Issues by Trial Court*

Elgohary nevertheless argues that, even if this Court finds that the arbitrator exceeded his authority, we must nonetheless remand to the trial court because "the court must make a finding on who is the successor to the contract." On this narrow issue, we agree.

In *Roe v. Ladymon*, the court of appeals, as we have done above, considered and decided that the court, not the arbitrator, should decide the issue of whether a non-signatory would be bound by the arbitration agreement. 318 S.W.3d at 518. Because the court found that the non-signatory did not clearly agree to submit the question to arbitration, "the district court was correct in finding that the arbitrability of the dispute was subject to independent review by the courts." *Id.* (citing *First Options*, 514 U.S. at 947, 115 S. Ct. at 1920)). The court of appeals then reviewed the *trial court's independent determination* that successor liability and agency did not bind the non-signatory to the contract. *Id.* at 518-520.

15

Similarly, in *Bridas S.A.P.I.C.*, the trial court, finding no clear and unmistakable evidence that the parties had agreed to arbitrate claims against a non-signatory, undertook "an independent review" of whether the non-signatory was bound to arbitrate. 345 F.3d at 354. The Fifth Circuit then reviewed and reversed the *trial court's decision* that the doctrines of agency and estoppel required the non-signatory to arbitrate. *Id.* at 356-63.

Here, the trial court properly decided that it, and not the arbitrator, had the authority to decide whether Herrera, as a non-signatory, had agreed to be bound by the arbitration. However, the trial court did not then conduct an independent review to determine whether arbitration could nonetheless be compelled because of either successor liability under the contract or under any of the six theories for compelling a non-signatory to arbitrate set forth in *In re Merrill Lynch*, 235 S.W.3d at 191. Absent such an independent review of arbitrability by the trial court, its action in denying the application to confirm and vacating the arbitration award against Herrera was premature.

## CONCLUSION

Accordingly, we reverse the judgment of the trial court and remand for further proceedings so that the trial court may consider the arbitrability issue.

We express no opinion as to it resolution of such issue. In light of this disposition, we need not address any remaining issues raised by Elgohary and decline to do so.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.