**Opinion issued June 5, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00193-CV

———————————

## VICTOR S. ELGOHARY AND PETER PRATT, Appellants

## V.

## HERRERA PARTNERS, L.P., HERRERA PARTNERS, G.A. HERRERA & CO., L.L.C. AND GILBERT A. HERRERA, Appellees

---

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-40476**

---

## MEMORANDUM OPINION

In this appeal from the denial of a post-judgment turnover order, we consider

whether (1) the trial court's order is final and appealable, and (2) the trial court

erred in denying appellant's request that certain property be turned over to a receiver appointed to collect a judgment on his behalf. We affirm.

## BACKGROUND

*The Underlying Suit*

In 2006, Elgohary and Herrera Partners, LP ["the LP"] entered into an employment agreement containing an arbitration provision. The LP was a Texas limited partnership; Gilbert Herrera was the limited partner and G.A. Herrera & Co., LLC was the general partner. In May 2007, the LP terminated Elgohary's employment. In that same month, Elgohary filed a wage claim with the Texas Workforce Commission, claiming that the LP had refused to pay salary and expenses it owed him. G.A. Herrera & Co., LLC, the LP's general partner, responded to the wage claim, and, in 2009, Elgohary initiated arbitration proceedings. In June 2010, the arbitrator issued an award and decision in favor of Elgohary and against the LP and Gilbert Herrera, individually. G.A. Herrera & Co., LLC was not named in the arbitration award.

In June 2010, Elgohary filed suit in the trial court below seeking to confirm the arbitration award against the LP and its limited and general partners, Gilbert Herrera and G.A. Herrera & Co., LLP. The trial court confirmed the award against the LP, but denied the motion to confirm as to Gilbert Herrera and G.A. Herrera & Co., LLP, and vacated the arbitration award against Herrera.

2

Elgohary appealed to this Court, arguing that the trial court erred in vacating the arbitration award as to Gilbert Herrera because the arbitrator, not the trial court, had the authority to determine whether Gilbert Herrera was bound by the arbitration agreement even though he was not a signatory to that agreement. *See Elgohary v. Herrera*, 405 S.W.3d 785, 789 (Tex. App.—Houston [1st Dist.] 2013, no pet.). This Court disagreed, holding that the trial court, not the arbitrator, was responsible for determining whether a non-signatory to the arbitration agreement could be bound by its terms. *Id.* at 793. Nevertheless, this Court reversed and remanded the trial court's judgment so that it could conduct an independent review to determine whether Gilbert Herrera, as a non-signatory, could be compelled to arbitrate under any applicable legal theory. *Id.* at 794.

The LP was not a party to this Court's earlier appeal, and the appeal did not affect the trial court's judgment confirming the arbitration award against the LP and rendering judgment against the LP in the amount of $29,432.05. In June 2011, while the appeal was pending, Elgohary sought and obtained a turnover order to pursue collection of the judgment against the LP. The trial court appointed Peter Pratt as receiver to pursue collection of the debt owed to Elgohary by the LP.

*The Amegy Bank Account*

In May 2012, Pratt sent Amegy Bank a letter entitled "Court Levy" invoking his power under the turnover order and requesting the bank to place a hold on all

3

accounts of "Herrera Partners, L.P. FEIN 20-4056583." Amegy responded that it "maintains no funds in the name of Herrera LP. However, Amegy does hold funds of [Herrera] Partners [a Texas General Partnership]."

The history of the Amegy account is as follows: The LP opened the account on June 6, 2007. The account agreement listed the employer tax identification number of the LP. Twelve days later, Herrera Partners formed its general partnership. That same day the LP transferred $100,000.00 from Sterling Bank to the Amegy Account. Twenty days after the account was opened, Herrera Partners applied for and received its federal employer tax identification number ["FEIN"] from the Internal Revenue Service. On June 28, 2007, the LP filed its Certificate of termination of a Domestic Entity with the Texas Secretary of State. There was evidence that the form of the business was changed from an LP to a general partnership to avoid the implementation of a new margin tax on limited partnerships, and that, to avoid the tax implications, the transaction had to be completed by July 1, 2007.

As such, the Amegy account had been temporarily set up in the name of the LP, with its FEIN, but after the general partnership was created and the LP dissolved, the account could only be accessed using Herrera Partners' FEIN. There was evidence that the $100,718.39 that the LP had deposited in the account was used to pay the LP's existing liabilities at the time, including salaries, costs,

4

and expenses. Thereafter, all deposits into the account were for services provided by Herrera Partners, not the LP. A commercial lender with Amegy Bank testified that Herrera Partners was the owner of the account since early August 2007, but that a new signature card was not executed by Herrera Partners until July 2010.

*Elgohary's Request for Disbursement of the Funds*

In May 2012, Pratt, the receiver, sent a "Court Levy" requesting that Amegy put a hold on all accounts belonging to the LP. Amegy responded by filing an interpleader stating that the LP had no accounts, but Herrera Partners did. Herrera Partners intervened in the interpleader, contending that the money in the account belonged to it, not to the LP. Elgohary and Pratt then filed a motion requesting the court to release the interpleaded funds to them in satisfaction of the LP's judgment. After a hearing on the same, the court denied their request and ordered the funds released to Herrera Partners. This appeal followed.

## IS THE ORDER APPEALABLE?

Herrera Partners contends that, even though the trial court's judgment against the LP was final when it was not timely appealed along with the rest of the case, it nonetheless became interlocutory again when this Court reversed and remanded the judgment against Gilbert Herrera, which was the subject of the earlier appeal.

5

This issue is moot. This Court resolved the issue when it denied Herrera Partner's motion to dismiss, stating, "This Court's judgment of March 5, 2013 reversed the trial court's judgment only as to parties to appeal number 01-11000550-CV. Herrera Partners was not a party to that appeal, thus any trial court judgment against it is unaffected by our March 5, 2013 judgment." Indeed, under the circumstances presented here, this Court could not reverse a judgment as to a non-appealing party. *See Fletcher v. Blair*, 874 S.W.2d 83, 84 n.1 (Tex. App.—Austin 1994, writ denied) (*citing Saigh v. Monteith*, 215 S.W.2d 610, 613 (Tex. 1948)). Therefore, the judgment against the LP was final when it was not timely appealed. Herrera Partners has cited no authority to support its assertion that this previously-final judgment became interlocutory once this Court reversed and remanded the portions of the judgment that were appealed. Thus, we will address the merits of Elgohary's appeal.

## IS DENIAL OF TURNOVER APPROPRIATE?

In their sole issue on appeal, Elgohary and the receiver, Pratt, contend the trial court erred in not ordering the money in the Amegy account turned over to Pratt in satisfaction of Elgohary's judgment against the LP. Herrera Partners, however, contends that it is the rightful owner of the money in the account, or that there is at least a legitimate dispute as to ownership thereby precluding Elgohary's reliance on the turnover statute.

6

*Standard of review*

We review turnover orders for an abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). Under the abuse-of-discretion standard, legal and factual insufficiency challenges do not constitute independent grounds for error, but are factors we examine in assessing whether the trial court abused its discretion. *Tanner v. McCarthy*, 274 S.W.3d 311, 322 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Jones v. Am. Airlines, Inc.*, 131 S.W.3d 261, 266 (Tex. App.—Fort Worth 2004, no pet.). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner, without reference to any guiding rules and principles. *Beaumont Bank*, 806 S.W.2d at 226. We will not reverse if there is some evidence of a substantive and probative character to support the trial court's decision. *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 324 (Tex. App.—Dallas 1997, writ denied); *Tanner*, 274 S.W.3d at 321–22.

*Applicable Law*

The turnover statute provides in subsection (b) that to aid a judgment creditor in the collection of an unsatisfied judgment, a trial court may:

> (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;
>
> (2) otherwise apply the property to the satisfaction of the judgment; or

7

> (3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(b) (Vernon 2008). Here, the trial court appointed Pratt as receiver pursuant to § 31.002(b)(3), and no complaint is raised about that action. Elgohary, however, contends that the trial court erred by not ordering Amegy Bank to release the funds to Pratt so that he could take possession of the property to satisfy Elgohary's judgment. Herrera Partners contends that the Amegy account was not a proper subject of the turnover statute, thus the trial court's order refusing to order Amegy to release the funds to Pratt was not an abuse of discretion. Specifically, Herrera Partners contends that the turnover statute cannot be used to resolve disputes as to ownership of property, nor can it be used to adjudicate the rights of someone not a party to the judgment.

*Analysis*

We agree that the turnover statute does not authorize a court to issue orders against those who are not judgment debtors or under the judgment debtor's control. *Beaumont Bank*, 806 S.W.2d at 227. "A turnover order that issues against a non-party for property not subject to the control of the judgment debtor completely bypasses our system of affording due process. Otherwise, a court could simply order anyone (a bank, an insurance company, or the like) alleged to owe money to

8

a judgment debtor to hand over cash on threat of imprisonment." *Ex parte Swate*, 922 S.W.2d 122, 125 (Tex. 1996) (J. Gonzales, concurring).

Similarly, as a purely procedural mechanism to aid in collecting judgments, a turnover order cannot be used as a shortcut to avoid judicial proceedings necessary to provide third parties due process in adjudicating their substantive rights. *See, e.g.*, *Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 439 (Tex. App.—San Antonio 1994, no writ) (reversing judgment against partners when underlying judgment involved corporation, holding that it was improper to issue order against non-judgment debtor); *Republic Ins. Co. v. Millard*, 825 S.W.2d 780, 783 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding) (issuing mandamus because trial court abused its discretion by including debtor's insurance company in turnover order when creditors sought title to debtor's cause of action against insured); *Cravens, Dargan & Co. v. Peyton L. Travers Co.*, 770 S.W.2d 573, 576–77 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (holding turnover statute could not be used as procedural tool against State Board of Insurance to reach debtor's financial-responsibility deposit with that agency); *United Bank Metro v. Plains Overseas Group, Inc.*, 670 S.W.2d 281, 284 (Tex. App.—Houston [1st Dist.] 1983, no writ) (holding creditor who obtained judgment against individual was not entitled to turnover order against corporation until creditor successfully pierced corporate veil in separate proceeding); *Steenland v. Tex. Commerce Bank*

9

*Nat'l Ass'n*, 648 S.W.2d 387, 390–91 (Tex. App.—Tyler 1983, writ ref'd n.r.e.) (concluding turnover statute does not authorize appointment of receiver to sell homestead to obtain its non-exempt excess value until substantive issues are established in separate proceeding brought for that purpose).

Here, it is undisputed that Herrera Partners is not a party to the underlying judgment; the LP, not Herrera Partners, is the judgment debtor. However, Elgohary argues that "[t]he evidence proves beyond dispute that Gilbert Herrera controls the entities and has complete and unfettered discretion to move funds between the different accounts," and that "[t]he lower court was required to look at who controls the funds in order to determine ownership of the Amegy Account." Elgohary has also argued that all of the companies are "mere alter egos of Gilbert Herrera," and that courts should disregard "corporate fictions" when they are being used to perpetrate a fraud or work an injustice.

However, Elgohary cannot use the turnover statute to determine ownership of disputed funds or litigate issues of alter-ego. *See Cravens, Dargan & Co.*, 770 S.W.2d at 576–77 ("As the turnover statute is purely a procedural took it is not a device through which we can determine ownership of the deposited funds."); *Bay City Plastics, Inc. v. McEntire*, 106 S.W.3d 321, 325 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("This Court has previously held that the turnover statute is not a device through which we can determine ownership of property."); *United*

10

*Bank Metro, Inc.*, 670 S.W.2d at 284 ("Although neither [party from whom turnover was sought] are judgment debtors, the appellant argues that they should be treated as judgment debtors, since they are merely alter egos of [the] judgment debtors[.]" This argument would permit the appellant to skip the trial on the merits in this case with respect to the alter ego issue and declare itself the winner."); *Republic Ins. Co*, 825 S.W.2d at 783 ("[W]e do not construe [the turnover statute] as creating a right in the judgment creditors and debtors to initiate and incorporate in the proceeding an entirely different lawsuit against a third party who is not part of the original judgment.")

Because Herrera Partners is a third party to the underlying judgment sought to be enforced, the trial court did not abuse its discretion in determining that the turnover statute cannot be used as a mechanism to adjudicate its substantive rights. Any issues of successor liability, alter ego, or ownership of disputed property should not be resolved in a turnover proceeding.

We overrule Elgohary's and Pratt's sole issue on appeal.

**CONCLUSION**

We affirm the trial court's judgment.


                                    Sherry Radack
                                    Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.