

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00657-CV

Richard **LESHIN**, Successor Trustee of The Davila Family Trust, Trust A,
Appellant

v.

Juan Gerardo **OLIVA** and Rosina Oliva, Individually
and as Successor Trustee of The Davila Family Trusts B, C, and D,
Appellees

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2008-CVF-000855-D4
Honorable Oscar J. Hale Jr., Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  July 29, 2015

REVERSED AND REMANDED

This is an appeal from a trial court's judgment confirming an arbitration award in favor of

appellees, Juan Gerardo Oliva and Rosina Oliva, Individually and as Successor Trustee of The

Davila Family Trusts B, C, and D (collectively "the Olivas"). On appeal, appellant Richard Leshin,

Successor Trustee of The Davila Family Trust, Trust A, raises two related issues, contending the

trial court erred in confirming the award because the arbitrator exceeded his powers by issuing an

award against him in his individual capacity when he was not subject to the claims or served with

notice. Because we conclude the arbitrator exceeded his powers, we reverse the trial court's

judgment and remand the matter for further proceedings so that the trial court may consider the issue of arbitrability and conduct an independent review on that issue.

## BACKGROUND

Pioquinto Ramon Davila and his wife, Guadalupe Rosalinda Davila, created The Davila Family Trust, naming themselves trustees and lifetime beneficiaries of the trust. The Davilas funded the trust with all of their property, including a substantial amount of stock in the International Bank of Commerce of Laredo, now known as International Bankshares Corp. and sometimes referred to as IBC Bank. The trust was set up as a revocable trust to become partially irrevocable upon the death of either Pioquinto or Guadalupe, whichever occurred first. It also included the following arbitration agreement:

> Any controversy between the Trustees and any controversy between the Trustee and any other parties to this Trust, including Beneficiaries, involving the construction or application of any of the terms, provisions, or conditions of this Trust shall, on the written request of any disagreeing party served on the other or others, be submitted to arbitration. The parties to such arbitration shall each appoint one person to hear and determine the dispute and, if they are unable to agree, then the persons so chosen shall select another impartial arbitrator whose decision shall be final and conclusive upon all parties. The cost of arbitration shall be borne by the losing party or parties, in such proportion as decided in arbitration proceedings. Such arbitration shall comply with the Commercial Arbitration Rules of the American Arbitration Association, 140 West 51st Street, New York, New York, 10020.

Guadalupe died first, and pursuant to the trust's terms, it was divided into four separate trusts, now known as Trusts A, B, C, and D. Trust D was also known as the GST Trust. Pioquinto served as trustee of each trust until his death. Pioquinto executed two amendments to Trust A, providing that all his personal and household effects of every kind be distributed to Juan Gerardo upon Pioquinto's death, appointing Leshin to serve as successor trustee to Trust A, and increasing the bequest for his new wife, Alma Guadalupe Lozano Davila. Shortly thereafter, a dispute arose between the Olivas and Pioquinto, and the Olivas filed a petition for an accounting in Webb County

District Court. In response, Pioquinto filed a motion to compel arbitration, which was granted. The Olivas then filed their claim with the American Arbitration Association ("AAA"). As the matter proceeded to arbitration, Pioquinto died. After Pioquinto's death, Leshin was named successor trustee of Trust A and Rosina was ultimately named successor trustee of Trusts B, C, and D. The Olivas eventually agreed not to prosecute their claim, and the case was closed. However, in 2013, Rosina filed an "Original Claim in Arbitration" with the AAA, requesting an accounting and seeking a declaratory judgment. Juan Gerardo intervened, alleging Leshin failed to take possession of Pioquinto's personal and household effects and deliver them to him when Pioquinto died. An arbitration proceeding was held, and at the conclusion of arbitration, the arbitrator issued an arbitration award in favor of Juan Gerardo and Rosina. As is relevant to this appeal, the award included the following provisions:

> Richard Leshin, Trustee, shall provide to Juan Gerardo Oliva within thirty (30) days a full and complete accounting, and distribution of all of the personal and household effects of Pioquinto Ramon Davila as of September 11, 2010. If such property cannot be distributed to Claimant Juan Gerardo Oliva, Juan Gerardo Oliva is awarded money damages equal to the fair and reasonable value of the property, which amount is $79,426.00 against Richard Leshin, Individually and as Trustee.

> \* \* \*

> Claimant, Juan Gerardo Oliva, is awarded reasonable and necessary attorney's fees and litigation expenses in the sum of $5,755.00 to be paid by Richard L. Leshin.

> Claimant, Juan Gerardo Oliva, is awarded American Arbitration Association expenses in the sum of the amount of $5,595.01 to be paid by Richard L. Leshin.

> \* \* \*

> Claimant, Rosina Oliva, Successor Trustee, is awarded reasonable and necessary attorney's fees and litigation expenses in the sum of $4,175.00 to be paid by Richard Leshin.

> Claimant, Rosina Oliva, Successor Trustee, is awarded American Arbitration Association expenses in the sum of $12,950.91, as shown by the records of the AAA in this case, to be paid 60% by Richard Leshin. Therefore, Richard Leshin, shall

- 3 -

reimburse Rosina Oliva the additional sum of $7,770.55, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Rosina Oliva.

Despite the arbitrator's award, Leshin failed to distribute any of the relevant property to Juan Gerardo. Rather, in his capacity as Successor Trustee of Trust A, he filed an application to vacate the award on the basis that the arbitrator exceeded his powers when he issued an award against Leshin in his individual capacity. The trial court rendered judgment confirming the award. This appeal followed.

## ANALYSIS

Leshin contends the trial court erred in confirming the award against him in his individual capacity because he was never a party in his individual capacity, nor was he served with notice in his individual capacity. Although stated as two separate issues, we construe Leshin's ultimate complaint to be that the arbitrator exceeded his powers in issuing an award against him in his individual capacity, and therefore, the trial court's judgment confirming the award must be reversed.

### Standard of Review

We review a trial court's decision to confirm or vacate an arbitration award de novo. *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. 2010); *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 263 (Tex. App.—San Antonio 2003, pet. denied). This standard for reviewing arbitration awards stems from our state's policy strongly favoring the arbitration of disputes. *See Rachal v. Reitz*, 403 S.W.3d 840, 842 (Tex. 2013); *CVN Grp. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). Because an arbitration award has the same effect as a judgment of a court of last resort, we give the award great deference and indulge every reasonable presumption in favor of the award and none against it. *CVN Grp.*, 95 S.W.3d at 238; *City of Laredo v. Mojica*, 399 S.W.3d 190, 195 (Tex. App.—San Antonio 2012, pet. denied). We

may not substitute our judgment for that of the arbitrator merely because we would have reached a different decision. *Kosty v. S. Short Harbour Cmty. Ass'n, Inc.*, 226 S.W.3d 459, 463 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Accordingly, the review of an arbitration award is "extraordinarily narrow," and only in extreme cases will a trial court vacate an award. *Centex/Vestal*, 314 S.W.3d at 683; *CVN Grp.*, 95 S.W.3d at 238; *Mojica*, 399 S.W.3d at 195; *GJR Mgmt. Holdings*, 126 S.W.3d at 263.

A reviewing court will not set aside an arbitration award for a mere mistake of fact or law. *Mojica*, 399 S.W.3d at 195. In fact, absent specific common law or statutory grounds for vacating, modifying, or correcting an award, a reviewing court must confirm an arbitration award. *CVN Grp.*, 95 S.W.3d at 238. Statutory grounds for vacating, modifying, or correcting an award can be found in the Federal Arbitration Act as well as the Texas General Arbitration Act. 9 U.S.C. § 10(a); TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3) (West 2014). Pursuant to these statutes, a trial court may vacate an arbitration award for any one of several enumerated reasons, including the contention that the arbitrator exceeded his powers. 9 U.S.C. § 10(a); TEX. CIV. PRAC. & REM. CODE ANN. § 171.087 (West 2014); *Elgohary v. Herrera*, 405 S.W.3d 785, 789 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 706 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

An arbitrator exceeds his powers if he decides matters not properly before him. *Elgohary*, 405 S.W.3d at 789. He also exceeds his power, as Leshin asserts in this matter, when he issues an award against a party who is not subject to arbitration. *Id.*; *Rapid Settlements*, 294 S.W.3d at 706. Therefore, we must determine whether the arbitrator exceeded his powers when he concluded

Leshin—in his individual capacity—was bound to arbitrate and subject to an individual award. *See Elgohary*, 405 S.W.3d at 789; *Rapid Settlements*, 294 S.W.3d at 706.[1]

### *Arbitrator Exceeded His Powers?*

As stated above, we construe Leshin's ultimate complaint to be that the arbitrator exceeded his powers by issuing an award against him in his individual capacity when he was neither a party to the arbitration agreement in his individual capacity, nor served with a notice of claim in his individual capacity. Accordingly, he contends he was not subject, in his individual capacity, to arbitration or any award stemming therefrom.

In response, Juan Gerardo contends Leshin failed to come forth with a complete record to establish the basis for his claims, and therefore, this court cannot vacate the award. Alternatively, should we hold the record is sufficient to determine Leshin's claims, the Olivas argue the arbitrator did not exceed his powers because the arbitrator had the power to determine whether Leshin, as an individual, was a party subject to arbitration. In other words, the Olivas contend the arbitrator had the power to determine the issue of arbitrability—what claims may be submitted to arbitration and who is bound by an arbitration agreement—based on the broad language of the arbitration agreement, the AAA Commercial Arbitration Rules, and sections 114.008(a) and 114.0832(d) of the Texas Property Code. *See Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 (Tex.

---

[1] We recognize there is disagreement between the Olivas regarding whether the arbitrator actually issued an award against Leshin in his individual capacity. Juan Gerardo maintains that portions of the award are against Leshin in his individual capacity, not merely in his capacity as trustee. However, in her brief and at oral argument, Rosina attempts to concede that the award of attorney's fees and AAA costs in her favor are against Leshin only in his capacity as trustee, not in his individual capacity. In other words, Rosina contends the arbitration award, at least as to her, is not against Leshin in his individual capacity. However, as we explain below, whether Leshin, individually, is a party to the arbitration and subject to an award emanating therefrom is a gateway issue for the trial court. Moreover, the language in the award with regard to attorney's fees and AAA costs is essentially the same with regard to both Juan Gerardo and Rosina. Thus, we hold Rosina's attempted concession has no impact on our holding or judgment.

App—Dallas 2010, pet. denied). Accordingly, it is the Olivas' position that Leshin failed to establish a statutory or common law ground for vacating the award.

### a. *Complete Record*

Juan Gerardo contends we cannot hold the trial court erred in confirming the award against Leshin individually because Leshin failed to come forth with a complete record for us to review to support his arguments. Specifically, Juan Gerardo complains the absence of the arbitration transcript prevents this court from determining whether the award should be vacated. We disagree.

We recognize a non-prevailing party who seeks to vacate an arbitration award bears the burden of bringing forth a complete record in the trial court that establishes the basis for vacating the award. *See Centex/Vestal*, 314 S.W.3d at 684. Generally, without a complete record and specifically without an arbitration transcript, we presume the evidence was adequate to support the award, and accordingly, we will uphold it. *Id.*; *see also Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 267 (Tex. App—Houston [14th Dist.] 1995, no pet.) ("Without a record, we are to presume that adequate evidence was presented to support the arbitration award.") In accordance with this principle, several Texas appellate courts have held that there can essentially be no appellate review of an arbitrator's decision without a complete record of the evidence presented to the arbitrator. *See Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568–69 (Tex. App.—Dallas 2008, no pet.) (refusing to determine if arbitrator committed gross mistake due to lack of complete record); *Gumble v. Grand Homes 2000, L.P.*, 334 S.W.3d 1, 1 (Tex. App.—Dallas 2007, no pet.) (noting lack of record of arbitration proceedings as reason for rejecting appellants' arguments); *Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 706 (Tex. App.—Fort Worth 2006, pet. denied) ("[T]he lack of a record of the arbitration proceedings prevents review of these issues."); *GJR Mgmt. Holdings, L.P.*, 126 S.W.3d at 263–64 ("Because we have no record [of the

arbitration proceedings], we have no way of judging whether bad faith or failure to exercise honest judgment in fact occurred.").

However, in some cases, the application of the general rule only limits—rather than prevents—an appellate court's ability to determine whether an arbitrator exceeded his powers. *See Centex/Vestal*, 314 S.W.3d at 685. Typically, the scope of an arbitrator's power is derived from the arbitration pleadings, motions, and documents containing the arbitration agreement. *Id.* Here, the appellate record consists of the arbitration award, the pleadings regarding Leshin's request to vacate the award, and a copy of the trust agreement containing the arbitration agreement. Accordingly, because the scope of the arbitrator's powers is ultimately derived from these documents, we conclude the lack of the arbitration transcript does not preclude this court from considering the merits of Leshin's appeal. *See id.* Therefore, we will consider Leshin's claim that the arbitrator exceeded his powers, and the Olivas' contention that Leshin's status was a matter for the arbitrator to decide, i.e., an issue of arbitrability. However, in doing so, we presume any existing evidence supports the award. *See id.*

### b. *Arbitrability*

In this case, as previously noted, Leshin contends the arbitrator exceeded his powers when he issued an award against Leshin in his individual capacity. Leshin presents two bases for this contention. Leshin first asserts the arbitrator exceeded his powers when he implicitly determined Leshin, in his individual capacity, was a party to the arbitration agreement. According to Leshin, he was not a party to the arbitration agreement in his individual capacity, only in his capacity as trustee. Therefore, Leshin concludes we must reverse the trial court's judgment confirming the award and render judgment that Leshin, in his individual capacity, was not a party to the arbitration agreement, and therefore, not subject to the award issued against him in that capacity. To support his position, Leshin relies on cases involving non-signatories to arbitration agreements, arguing

there is clear and unmistakable evidence that he, in his individual capacity, did not agree to arbitrate the issue of arbitrability, i.e., who is bound by an arbitration agreement. *See Saxa Inc.*, 312 S.W.3d at 229.

The Olivas counter, arguing the arbitrator did not exceed his powers because the decision to determine whether Leshin, in his individual capacity, was a party to the arbitration agreement and bound thereby was within the arbitrator's power. To support this contention, the Olivas point to the broad language of the arbitration agreement and the arbitration agreement's reference to the AAA Commercial Arbitration Rules as clear and unmistakable evidence that Leshin agreed in his individual capacity to submit the determination of whether he is a party to the arbitration agreement to the arbitrator. The Olivas also assert the arbitrator's powers to determine this issue arise from sections 114.008(a) and 114.0832(d) of the Texas Property Code.

To address these arguments, we begin with the fundamental concept that arbitration is a matter of contract law. *Roe v. Ladymon*, 318 S.W.3d 502, 510 (Tex. App.—Dallas 2010, no pet.). It is a universally accepted principle of contract law that an individual must be a party to a contract in order to be bound by it. *Rapid Settlements*, 294 S.W.3d at 706. In other words, under general rules of contract law, a contract cannot bind a nonparty, i.e. a non-signatory. *Id.* Similarly, an arbitration agreement between specific parties cannot generally bind nonparties, i.e. non-signatories. *GM Oil Properties, Inc. v. Wade*, No. 01-08-00757-CV, 2012 WL 246041 at *6 (Tex. App—Houston [1st Dist.] Jan. 26, 2012, no pet.) (mem. op.) ("It is a foundational principle that a party cannot be compelled to arbitrate when a party has not agreed to do so."); *Roe*, 318 S.W.3d at 511. However, in certain instances, a nonparty, i.e. a non-signatory, may be bound by the terms of an arbitration agreement just as a nonparty, i.e. non-signatory, may be bound by any other contract. *Roe*, 318 S.W.3d at 511.

Whether a person or entity is a party to an arbitration agreement, and therefore bound by any award issued as a result of the arbitration proceeding, is a question of arbitrability. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995). The question of arbitrability encompasses what claims may be submitted to arbitration and who can be bound to an arbitration agreement. *See Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 (Tex. App—Dallas 2010, pet. denied) ("These 'gateway matters' include whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate."). The case before us raises the issue of arbitrability only with regard to the question of who is bound to and by the arbitration agreement and any award; there is no issue with regard to what claims were submitted. The specific question is who— the arbitrator or the courts—decides who is a party to the arbitration agreement and bound thereby.

On more than one occasion, the United States Supreme Court has concluded that the question of arbitrability is a "gateway" issue for judicial determination absent evidence that the parties clearly and unmistakably provided otherwise. *See Howsam*, 537 U.S. at 83 ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."); *First Options*, 514 U.S. at 946 (holding that question about whether party is required to arbitrate dispute is subject to independent review by courts). Likewise, the Texas Supreme Court has stated the question of arbitrability is a "gateway matter" to be determined by a court, rather than an arbitrator, unless the parties clearly and unmistakably provide otherwise. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005). In cases where the reviewing court determines that the parties "clearly and unmistakably" agreed to submit the issue of arbitrability to the arbitrator, then it should defer to the arbitrator's decision on the issue. *First Options*, 514 U.S. at 943; *Elgohary*, 405 S.W.3d at 790; *Roe*, 318 S.W.3d at 514. On the other hand, in the absence of "clear and

unmistakable evidence" that the parties agreed to the contrary, then the ultimate power to decide the issue of arbitrability lies with the courts. *First Options*, 514 U.S. at 943; *Elgohary*, 405 S.W.3d at 790; *Roe*, 318 S.W.3d at 514. Accordingly, in determining whether the arbitrator exceeded his powers by implicitly deciding Leshin, in his individual capacity, was a party to the arbitration agreement, we must determine whether Leshin, individually, and the Olivas clearly and unmistakably agreed to submit the issue of arbitrability—who was a party to and bound by the arbitration agreement—to the arbitrator. *See First Options*, 514 U.S. at 943; *Elgohary*, 405 S.W.3d at 790; *Roe*, 318 S.W.3d at 514. In making this determination, as noted above, we must presume any existing evidence supports the award. *Centex/Vestal*, 314 S.W.3d at 685.

The Olivas point to the broad language of the arbitration agreement and its governance by the AAA Commercial Arbitration Rules as clear and unmistakable evidence that Leshin, individually, and the Olivas agreed to arbitrate the issue of arbitrability. Thus, according to the Olivas, it was within the arbitrator's power to implicitly conclude that Leshin, in his individual capacity, was a party subject to the arbitration award. The Olivas rely on *Saxa Inc. v. DFD Architecture Inc.* for the proposition that a broad arbitration clause can create a presumption of arbitrability. 312 S.W.3d at 229–31. In *Saxa*, the court stated "a court must examine the arbitration agreement to decide if, when construed under the relevant state law, the agreement evidences a clear and unmistakable intention that the arbitrators will have the authority to determine the scope of arbitration." *Id.* at 229. The court then went on to address the language of the arbitration agreement. *Id.* However, in *Saxa*, the parties to the arbitration agreement, DFD Architecture, Inc. and Saxa, Inc., did not dispute that they both entered into a written arbitration agreement; instead, at issue was whether that arbitration agreement bound third parties, who sought to join an arbitration proceeding already pending between DFD Architecture, Inc. and Saxa, Inc. *Id.* at 226–27. In considering the broad language of the arbitration agreement, the court recognized it was

not "confronted with a non-signatory to the arbitration agreement contesting whether it is bound by a signatory's agreement to arbitrate." *Id.* at 230.

The case before us, contrary to *Saxa Inc. v. DFD Architecture Inc.*, involves a non-signatory—Leshin, who in his individual capacity did not sign the trust agreement that included the arbitration agreement. *See Elgohary*, 405 S.W.3d at 789. An agent in his individual capacity is a non-signatory when that agent signs an agreement with an arbitration provision in his representative capacity. *See Elgohary*, 405 S.W.3d at 789 (identifying Herrera, in individual capacity, as non-signatory when he signed arbitration agreement as partner of L.P.); *Roe*, 318 S.W.3d at 515 (indicating partner's signature on contract does not render him party to contract in individual capacity, and thus, issue is whether non-signatory can be bound by arbitration). Here, Leshin signed the trust agreement, which contained the arbitration provision, in his capacity as trustee. Accordingly, Leshin, in his individual capacity, is a non-signatory. *See Elgohary*, 405 S.W.3d at 789; *Roe*, 318 S.W.3d at 515. Therefore, we hold the court's analysis in *Saxa Inc. v. DFD Architecture Inc.* is inapplicable here. *See Elgohary*, 405 S.W.3d at 789; *Roe*, 318 S.W.3d at 515.

In cases involving non-signatories, courts do not consider the terms of the arbitration agreement as any evidence when looking for "clear and unmistakable evidence" as to whether parties agreed to arbitrate the issue of arbitrability. *First Options*, 514 U.S. at 943 (focusing on intent of parties to dispute rather than arbitration agreement); *Elgohary*, 405 S.W.3d at 790 (stating that terms of contracting parties' agreement is not evidence that nonparty agreed to arbitrate); *Roe*, 318 S.W.3d at 514 ("We find it significant that when the [United States] Supreme Court in *First Options* looked for clear evidence of an agreement to arbitrate arbitrability, it did not even address the terms of the arbitration agreement."). Therefore, although we generally presume any existing evidence supports the award, the broad language of the arbitration clause, which is the evidence

relied upon by the Olivas as clear and unmistakeable evidence, is no evidence in this case because Leshin is a non-signatory. To constitute evidence in cases involving non-signatories, we must look at whether the parties to the dispute before the courts—i.e., Leshin, in his individual capacity, and the Olivas—clearly and unmistakably agreed to arbitrate the issue of arbitrability, rather than whether the parties to the contract containing the arbitration clause—i.e. Leshin, in his capacity as trustee, and the Olivas—agreed to arbitrate the issue of arbitrability. *See First Options*, 514 U.S. at 943; *Elgohary*, 405 S.W.3d at 790; *Roe*, 318 S.W.3d at 514.

In the context of non-signatories, i.e. agents in their individual capacity, appellate courts have recognized a number of situations in which the evidence did not amount to clear and unmistakable evidence of the parties' agreement to arbitrate the issue of arbitrability, and thus was not evidence to support an arbitration award. For example, evidence that an individual signed the arbitration agreement as an agent in his representative capacity is not clear and unmistakable evidence that the individual, in his individual capacity, agreed to arbitrate the issue of arbitrability. *See Elgohary*, 405 S.W.3d at 790–91; *Roe*, 318 S.W.3d at 515–16. Also, evidence that the arbitration agreement references the AAA Commercial Arbitration Rules, and the fact that those rules allow an arbitrator to decide his own jurisdiction is also not clear and unmistakable evidence of a non-signatory's agreement to arbitrate the issue of arbitrability. *See Elgohary*, 405 S.W.3d at 791-92 (holding partner's agreement to arbitrate under AAA rules is not clear and unmistakable evidence partner, in individual capacity, agreed to arbitrate under AAA rules); *Roe*, 318 S.W.3d at 517 (holding L.L.P.'s agreement to arbitrate in accordance with AAA rules was not clear and unmistakable evidence of individual's agreement to submit gateway issue of arbitrability to arbitrator). Lastly, an agreement's "successors and assigns clause" does not amount to clear and unmistakable evidence of an agreement to arbitrate the issue of arbitrability. *See Elgohary*, 405 S.W.3d at 792–93. Accordingly, we disagree with the Olivas and conclude that neither the broad

language of the arbitration agreement, nor the reference to AAA Commercial Arbitration Rules, even if considered together, constitutes clear and unmistakable evidence that Leshin, in his individual capacity, agreed to submit the gateway issue of arbitrability to the arbitrator. *See First Options*, 514 U.S. at 943; *Elgohary*, 405 S.W.3d at 791–92; *Roe*, 318 S.W.3d at 517. Therefore, there is no evidence upon which we can uphold the arbitration award. *See Centex/Vestal*, 314 S.W.3d at 685.

The Olivas next direct our attention to sections 114.008(a) and 114.0832(d) of the Texas Property Code, arguing these provisions vest the arbitrator with the power to determine that Leshin, in his individual capacity, was a party to the arbitration agreement. Section 114.0832(d) of the Texas Property Code indicates a trustee can be held personally liable for tortious acts committed when acting as trustee, and section 114.008 of the Texas Property Code outlines the ways a court may compel a trustee to remedy such a breach of trust. TEX. PROP. CODE ANN. §§ 114.008 and 114.0832 (West 2014). The Olivas' argument is misplaced. Whether sections 114.008(a) and 114.0832(d) of the Texas Property Code compel a non-signatory to arbitrate is a question for the trial court to determine when conducting an independent determination on the issue of arbitrability. *See Elgohary*, 405 S.W.3d at 793 (recognizing theories which court could compel non-signatory to arbitrate during its independent review).

Accordingly, we hold because there is no clear and unmistakable evidence that Leshin, in his individual capacity, agreed to submit the gateway issue of arbitrability to the arbitrator, there is no evidence upon which we can uphold the arbitration award. *See First Options*, 514 U.S. at 943; *Elgohary*, 405 S.W.3d at 791–92; *Roe*, 318 S.W.3d at 517. Here, the trial court, not the arbitrator, should have decided the "gateway issue" of whether Leshin, in his individual capacity, agreed to arbitrate the issue of arbitrability. *See First Options*, 514 U.S. at 943; *Elgohary*, 405 S.W.3d at 790; *Roe*, 318 S.W.3d at 514. Having decided the question of arbitrability is one for

judicial determination, we hold the arbitrator exceeded his powers by implicitly determining Leshin, individually, was a party to the arbitration agreement, and thereby bound by any award in his individual capacity.

### *Rendition or Remand?*

Leshin asserts that if we conclude the arbitrator exceeded his powers, we must render judgment that he was not a party to the arbitration agreement, and therefore, not bound by the award. Leshin essentially asks this court to determine whether he was, individually, a party to the arbitration provision. Leshin's request loses sight of the fact that the trial court acted prematurely in confirming the award.

As explained above, the gateway issue of determining whether a non-signatory is a party to the arbitration agreement was for the trial court—not the arbitrator—to determine. When given that opportunity, the trial court must conduct an independent review of whether there are any applicable theories in which a court could compel a non-signatory to arbitrate. *See Elgohary*, 405 S.W.3d at 793. We have reviewed the record and nowhere therein did the trial court conduct an independent review to determine whether any theory compelled Leshin, in his individual capacity, to arbitrate. *See id* at 793 (requiring independent review to determine whether court could compel non-signatory to arbitration); *Roe*, 318 S.W.3d at 514 (remanding case for independent review regarding arbitrability absent clear and unmistakable evidence party agreed to arbitrate). Rather, at the hearing on the motion to vacate the arbitration award, the trial court erroneously concluded the issue of arbitrability was within the arbitrator's jurisdiction as a general rule of arbitration. Therefore, the trial court confirmed the arbitration award on the basis that "there is no evidence to convince this court that the arbitrator did not have jurisdiction to include Leshin as an individual" without first considering the theories that could bind a non-signatory to arbitration. *See Elgohary*, 405 S.W.3d at 794.

Accordingly, we reverse the trial court's judgment confirming the arbitration award. However, we remand the matter for further proceedings to allow the trial court to conduct an independent review to determine whether Leshin, in his individual capacity, could be compelled by a court to arbitrate under any legal theory. *See id.* Because of our disposition, we need not consider Leshin's issue concerning lack of service.

## CONCLUSION

Based on the foregoing, we hold the arbitrator exceeded his powers by implicitly determining Leshin was a party to the arbitration agreement and issuing an award against Leshin in his individual capacity. Whether Leshin was a party to the arbitration agreement under some legal theory is a question of arbitrability, which is for the trial court to determine. Therefore, we reverse the trial court's judgment confirming the arbitration award and remand the matter to the trial court for further proceedings. Specifically, we remand for the trial court to consider the arbitrability issue and determine whether there is any legal theory that would allow the trial court to compel Leshin, in his individual capacity, to arbitrate and be bound by any ensuing award.

Marialyn Barnard, Justice